Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE LLC**
6701 Center Drive West, 1400
Los Angeles, CA 90045
Telephone: (310) 363-0030

Paula S. Bliss (MA BBO #352361) *(pro hac vice admission forthcoming)*
paula@justicelc.com
**JUSTICE LAW COLLABORATIVE LLC**
210 Washington Street
No. Easton, MA 02356
Telephone: (508) 230-2700

Allison S. Freeman (FL SBN 69539) *(pro hac vice admission forthcoming)*
allison@constable-law.com
**CONSTABLE LAW, P.A.**
139 6th Avenue S
Safety Harbor, FL 34695
Telephone: (727) 797-0100

*Counsel for Plaintiff, Jennifer Kemp*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER KEMP<br><br>        Plaintiff,<br>vs.<br><br>COOPERSURGICAL, INC., and COOPERGENOMICS, INC.<br><br><br>        Defendants. | **CASE NO.:** <u>'26 CV 3718 DMS MSB</u><br><br>**COMPLAINT FOR:**<br><br>1. **NEGLIGENCE**<br>2. **NEGLIGENT MISREPRESENTATION**<br>3. **NEGLIGENT HIRING AND SUPERVISION OF EMPLOYEES**<br>4. **BREACH OF CONTRACT**<br><br>*(CONT'D ON NEXT PAGE)* |

COMPLAINT

5. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
6. **BREACH OF FIDUCIARY DUTY**
7. **FRAUDULENT CLAIMS**
8. **VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*. (UNFAIR AND FRAUDULENT PRONGS)**
9. **VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS, & PROF. CODE §§ 17200, *ET SEQ*. (UNLAWFUL PRONG)**
10. **VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *ET SEQ*.**
11. **TRESPASS TO CHATTELS**
12. **UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff, JENNIFER KEMP, (hereinafter referred to as the "Plaintiff") brings this Complaint against Defendants, COOPERSURGICAL, INC. AND COOPERGENOMICS, INC. (hereinafter collectively referred to as "Defendants") and alleges as follows:

## PARTIES

1.      Plaintiff, JENNIFER KEMP, is a citizen of San Diego, California and had fertility treatments in San Diego, California.

2.      Defendant, COOPERSURGICAL, INC. is incorporated in Delaware and headquartered at 75 Corporate Drive, Trumbell, CT  06611. It manufactures,

- 2 -

sells and promotes products and services focused on fertility and women's health, including genetic testing.

3. Defendant, COOPERGENOMICS, INC., is a CooperSurgical company headquartered at 3 Regents Street, Suite 301, Livingston, New Jersey, 07039. It is described as CooperSurgical as the premier provider of genetic testing.

4. During the relevant time period, CooperSurgical performed pre-implantation genetic testing for aneuploidy (PGT-A) through CooperGenomics.

5. Together, CooperSurgical and CooperGenomics (hereinafter referred to as "Defendants") advertise, market, and sell PGT-A testing and perform PGT-A testing for IVF clinics and fertility providers.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Venue is proper in the United States District Court for the Southern District of California, San Diego, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and/or one or more Defendants conduct business in this District.

## FACTUAL BACKGROUND

8. Plaintiff was attempting to build her family.

9. After years of unsuccessful attempts to get pregnant, in 2024, Plaintiff went to Hanabusa IVF in San Diego, California to undergo fertility treatments and attempt to have a baby through in vitro fertilization ("IVF").

10. As an add-on to her IVF treatment in 2024, Plaintiff was sold Defendants' pre-implantation genetic testing for aneuploid (PGT-A).

11. Plaintiff purchased PGT-A based upon Defendants' claims that its PGT-A testing is greater than 97% accurate, would increase the success of IVF,

COMPLAINT

would decrease the chance of miscarriage, lead to a higher chance of pregnancy, reduce the time to pregnancy, increase live birth rate, and reduce the time and cost of IVF.

12. On October 18, 2024, Plaintiff signed an Informed Consent with CooperSurgical which stated that PGT-A testing "prior to implantation may increase chances of a successful IVF outcome", PGT-A testing "may reduce the risk of implantation failure and miscarriage", and the technology has an accuracy rate of ">97%".

13. Based upon these representations, Plaintiff purchased PGT-A testing from Defendants and trusted Defendants to perform PGT-A testing on her embryos.

14. On October 21, 2024, biopsies were taken by Hanabusa IVF from three of Plaintiff's embryos and shipped to Defendants.

15. Defendants received the samples on October 25, 2024.

16. On November 6, 2024, Defendants issued a report stating that there was "no result" for the testing of all three of Plaintiff's embryos.

17. Also on November 6, 2024, Defendants contacted Hanabusa IVF and informed Hanabusa IVF that Defendants were unable to issue results for Plaintiff's embryos due to an issue during the processing of the batch of samples and that an investigation had revealed the root cause of the issue was an operator error.

18. Defendants recommended that Plaintiff thaw, re-biopsy and re-freeze her embryos.

19. Defendants did not inform Plaintiff that additional biopsies for PGT-A testing, which requires thawing and refreezing the embryo, can cause additional damage to the embryo and negatively affect IVF outcomes.[1]

---

[1] *Id.*

- 4 -

COMPLAINT

20.    Embryos are fragile and vulnerable to damage from biopsy and exertion of the freezing and thawing process necessary for PGT-A testing to be performed. [2]

21.    Plaintiff's IVF clinic did inform Plaintiff that additional biopsies for PGT-A testing, which requires thawing and refreezing the embryo, can cause additional damage to the embryo and negatively affect IVF outcomes.[3]

22.    Thus, due to her own concerns about the impact of additional thawing and biopsying of her embryos, Plaintiff did not proceed with the re-biopsy.

23.    Due to Defendants' error, the three embryos were unable to be transferred.

24.    With no embryos suitable for transfer, Plaintiff had to proceed with an additional round of IVF treatment.

## GENERAL ALLEGATIONS

25.    The process of IVF starts with medication to stimulate the follicles to create several mature eggs for collection. Once the eggs are retrieved from the ovaries, they are then fertilized by the fertility clinic with sperm to create embryos. If the embryos reach the blastocyst stage, they are then ready for implantation to see if they result in a pregnancy.

26.    In an effort to increase the success of this process, PGT-A was created as an add-on to the process to screen the embryos and determine which are best suited for implantation. PGT-A is not performed by the clinics themselves. Rather, the clinics, such as Hanabusa IVF perform a biopsy where they take a small number of cells from the embryo and transfer them to a lab, such as Defendants, which performs the PGT-A testing and provides results to the clinic.

---

[2] Aluko, A., et.al. *Multiple cryopreservation – warming cycles, coupled with blastocyst biopsy, negatively affect IVF outcomes.* Reproductive Biomedicine Online. Vol. 42, Issue 3. March 2021.
[3] *Id.*

COMPLAINT

27.    Based on those results, it is determined which embryos are "euploid" or best suited for implantation and which embryos are "aneuploid" or abnormal and not suited for implantation.

28.    Defendants market and sell PGT-A testing to individual undergoing IVF to build their family. Specifically, PGT-A tests are marketed by Defendants as as increasing the success of IVF, decreasing the chance of miscarriage, leading to a higher chance of pregnancy, reducing the time to pregnancy, increasing live birth rates, increasing the chance of implantation and pregnancy, and reducing the emotional, physical, and financial impact of IVF. Defendants also market their PGTA tests as being 97% accurate.

29.    However, Defendants' PGT-A testing has never been validated and the benefits as stated by Defendants have no scientific support.

30.    Research has shown that the representations made by Defendants are false. Studies have found that when looking at clinic pregnancy, miscarriage, or live-birth rates, there is no difference between cycles utilizing PGT-A and cycles not utilizing PGT-A.[4]

---

[4] Yan, J., et al., *Live Birth with or without Preimplantation Genetic Testing for Aneuploidy,* N. Engl. J. Med. 385;22, November 25, 2021; Kucherov, A. et al. *PGT-A is associated with reduced cumulative live birth rate in first reported IVF stimulation cycles age ≤; an analysis of 133,494 autologous cycles reported by SART CORS,* Journal of Assisted Reproduction and Genetics (2023) 40:137-149; Munne, S., et al., *Preimplantation genetic testing for aneuploidy versus morphology as selection criteria for single frozen-thawed embryo transfer in good-prognosis patients: a multicenter randomized clinical trial.* Fertility and Sterility, Vol. 112, No. 6, December 2019; Practice Committee of the American Society for Reproductive Medicine and the Society for Assisted Reproductive Technology, *The use of preimplantation genetic testing for aneuploidy: a committee opinion.* Fertility and Sterility. Vol. 122, Issue 3. September 2024.

- 6 -

31. Further, research has shown that the accuracy rating for PGT-A is significantly lower than 97%.[5]

32. Defendants' false statements have severe consequences on the Plaintiff who decided to purchase PGT-A from Defendants' based upon these statements.

33. Ensuring adequate quality control for any PGT-A testing is also of critical importance given the enormous value of human embryos to their families.

34. Defendants are aware of the lengths to which IVF patients go to create embryos, their emotional and financial investment in assuring the viability of their embryos, and their expectations that the testing of said viability is accurate.

35. Inaccurate testing can result in the unnecessary harm and destruction of embryos.

36. Inaccurate testing can result in embryos being unable to be transferred.

37. Embryos are precious and irreplaceable. Human eggs, also known as oocytes, are a limited resource. A woman has about one million eggs at birth and this supply diminishes at a rate of about 1,000 eggs per month. This decline is part of the natural aging process and is commonly referred to as a woman's biological clock.

38. The loss of oocytes from the ovaries continues in the absence of menstrual cycles, and even when women are pregnant, nursing, or taking oral contraceptive.

39. Egg quality too diminishes with time, with miscarriages and chromosomal abnormalities occurring more frequently for older women.

---

[5] Marin, D., et.al. *Preimplantation genetic testing for aneuploidy: A review of published blastocyst reanalysis concordance data*. Prenatal Diagnosis. Vol. 4, Issue 5. Pp. 545-553. April 2021.

COMPLAINT

40. The results of PGT-A testing have substantial ramifications for those seeking to become parents, both physically and mentally.

41. Hanabusa IVF was responsible for performing the embryo biopsy needed for PGT-A testing while Defendants were responsible for performing the PGT-A testing.

42. Defendants were responsible for ensuring all steps of PGT-A testing were performed competently and that their employees were properly trained and supervised to ensure that testing was conducted accurately without error.

43. Upon information and belief, Defendants did not properly train and supervise their employees, agents and persons on how to operate and conduct PGT-A testing.

44. Plaintiff has suffered irreparable harm due to the actions of the Defendants.

45. Defendants' actions as well as their false and misleading statements had severe consequences, including the expenditure of thousands of dollars by Plaintiff as well as emotional damages.

46. Significant, important decisions about family building and how to proceed with treatment were made by the Plaintiff based upon the results of Defendants' PGT-A testing.

47. When the testing results are inaccurate or an error occurs and the testing does not perform as sold, those results have a detrimental effect.

48. Further, embryos that are damaged as a result of operator error during testing by Defendants are at risk due to re-freezing and re-biopsy.

49. Plaintiff purchased PGT-A testing due to her reliance upon Defendants' ability to accurately perform the test, their false and deceptive statements in selling the testing, and their material omissions of the truth about PGT-A testing.

COMPLAINT

50.    Plaintiff purchased PGT-A testing based on false and deceptive statements that Defendants' PGT-A testing is greater than 97% accurate, would increase the success of IVF, would decrease the chance of miscarriage, lead to a higher chance of pregnancy, reduce the time to pregnancy, increase live birth rate, and reduce the time and cost of IVF.

51.    Plaintiff would not have purchased PGT-A testing and would not have been damaged had she known the truth as further detailed below.

52.    Plaintiff would not have purchased PGT-A testing and would not have been damaged had she known the errors that could occur with testing.

53.    When undergoing fertility treatments, every day, week and month is important so time lost due to errors and embryos that were unable to be tested caused Plaintiff emotional and economic damage.

54.    As a result, Plaintiff has suffered economic and emotional loss.

55.    Plaintiff has lost the opportunity to transfer three embryos.

56.    Plaintiff has lost time to pregnancy as well as reproductive autonomy.

57.    Plaintiff's reproductive potential has been reduced due to the additional time for treatment due to Defendants' testing error.

58.    Plaintiff has had to conduct additional IVF cycles due to Defendants' testing error.

## CAUSES OF ACTION

### COUNT I
### Negligence

59.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

- 9 -

COMPLAINT

60. At all times relevant hereto, Defendants and their agents and/or employees undertook to provide specialized laboratory services in connection with Plaintiff's IVF treatment, including but not limited to the biopsy, handling, amplification, testing, analysis, and reporting of Plaintiff's embryos.

61. Defendants had a duty to exercise the level of care, skill, and diligence ordinarily possessed and exercised by reasonably prudent fertility laboratories under similar circumstances.

62. Defendants breached their duty and the standard of care in all of the following respects:

    a. Failing to have in place and/or compel compliance with protocols and procedures to ensure that PGT-A testing was properly performed;

    b. Failing to properly or adequately hire, train, and/or supervise their employees and/or agents to ensure that said agents and/or employees were adequately performing PGT-A testing that would not pose harm to Plaintiff's embryos;

    c. Failing to adequately determine that the PGT-A testing being performed was accurate;

    d. Failing to adequately determine that the PGT-A testing was being performed as sold to the Plaintiff.

63. This conduct fell far below the applicable standard of care for a genetic testing laboratory as Defendants failed to have proper quality control procedures and assurance programs on human errors in testing in accordance with CLIA.

64. As a direct and proximate cause of Defendants' misconduct, Plaintiff has suffered and will suffer additional damages.

///

///

COMPLAINT

## COUNT II
### Negligent Misrepresentation

65.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

66.    Defendants represented to Plaintiff several material facts that Defendants knew were not true, including but not limited to

    a.  Defendants' PGT-A testing is greater than 97% accurate;

    b.  Defendants' PGT-A testing increases the success of IVF;

    c.  Defendants' PGT-A testing decreases the chance of miscarriage;

    d.  Defendants' PGT-A testing leads to a higher chance of pregnancy;

    e.  Defendants' PGT-A testing reduces the time to pregnancy;

    f.  Defendants' PGT-A testing increases live birth rates across all age groups;

    g.  Defendants' PGT-A testing increases the chance of implantation;

    h.  Defendants' PGT-A testing reduces the emotional, physical, and financial impacts of IVF.

67.    Defendants had superior knowledge on PGT-A testing and had a duty to ensure the information was correct.

68.    Defendants knew these representations were false.

69.    Defendants knew that Plaintiff would rely on these false statements in deciding to purchase PGT-A testing, and intended that Plaintiff rely on these false statements.

70.    Plaintiff reasonably relied on Defendants' representations.

71.    Defendants made false representations, concealments, and non-disclosures to Plaintiff about their PGT-A testing and its impact on embryos.

COMPLAINT

72.    In making these false, misleading, and deceptive representations and omissions, Defendants knew and intended that the Plaintiff would rely upon the misrepresentations and pay for PGT-A testing services.

73.    Defendants also knew and intended that the Plaintiff would rely upon the results of their PGT-A testing to make decisions about their embryos and IVF treatment.

74.    Plaintiff reasonably relied upon Defendants' representations. As a direct and proximate result of the negligent misrepresentations concerning the reliability and accuracy of PGT-A, Plaintiff was harmed, and Defendants' misrepresentations were a substantial factor in causing harm.

## COUNT III
### Negligent Hiring and Supervision of Employees

75.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

76.    Defendants hired the employees and/or agents that caused, by their actions and/or inactions, the errors during PGT-A testing.

77.    Defendants knew and/or should have known that their employees and/or agents were unfit, not properly trained, and/or incompetent to conduct PGT-A testing.

78.    Defendants' hiring, supervision, and/or training of employees and/or agents responsible for Plaintiff's embryos was a substantial factor in causing Plaintiff's harm and damages.

///

///

///

- 12 -

COMPLAINT

## COUNT IV
### Breach of Contract

79.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

80.     Plaintiff signed a contract with Defendants to purchase PGT-A testing on October 18, 2024.

81.     In the contract, Defendants stated that PGT-A testing "prior to implantation may increase chances of a successful IVF outcome", PGT-A testing "may reduce the risk of implantation failure and miscarriage", and the technology has an accuracy rate of ">97%".

82.     The contract provided no information on the potential for operator error.

83.     Defendants' conduct was contrary to the provisions of the contract.

84.     Defendants' materially breached the contract with the Plaintiff when its PGT-A testing failed, was not accurate, and was not performed in compliance with the contract.

85.     Breach of the contract resulted in harm and damage to the Plaintiff and her embryos.

## COUNT V
### Negligent Infliction of Emotional Distress

86.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

87.     Defendants negligently misrepresented the quality, reliability and accuracy of its PGT-A testing services.

- 13 -

COMPLAINT

88. Defendants convinced Plaintiff to purchase PGT-A testing based upon false and misleading statements.

89. Defendants also convinced Plaintiff to make serious decisions based upon PGT-A.

90. Due to errors by Defendants, PGT-A testing did not perform as sold to the Plaintiff.

91. Due to errors by Defendants, Plaintiff lost months of treatment, had additional retrievals done, and was unable to transfer embryos with an incorrect result that may have in fact been suitable for transfer.

92. Defendants' negligent actions resulted in serious emotional distress to Plaintiff which was suffered because of the Defendants' errors in testing and deceptive and misleading representations and omissions about PGT-A testing thereby causing loss of time for fertility treatments, additional retrievals, and the loss of potentially "normal" embryos.

93. For these reasons, Plaintiff has suffered significant emotional damage.

94. Defendants' knew their actions would result in negligent infliction of emotional distress on the Plaintiff given the likelihood of genuine and serious mental distress from errors in testing, deceptive and misleading representations and omissions about PGT-A testing, and the refusal to allow Plaintiff to transfer their embryos.

95. This claim is asserted as a derivative of Defendants' professional negligence, not as a wholly independent cause of action.

## COUNT VI
### Breach of Fiduciary Duty

96. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

- 14 -

COMPLAINT

97. At all times herein mentioned, Defendants were the fiduciaries of Plaintiff.

98. Plaintiff placed trust and confidence in Defendants to properly conduct genetic testing of her embryos because they represented that they were experts in the field of PGT-A testing and utilized highly accurate technology.

99. Defendants exercised expert knowledge on PGT-A testing of Plaintiff's embryos as well as any decisions about Plaintiff's embryos based upon the results of testing.

100. Defendants failed to act as a reasonably careful fiduciary would have acted under the same or similar circumstances with respect to PGT-A testing.

101. Defendants' breach of fiduciary duty was a substantial factor in causing harm to Plaintiff.

102. This harm includes financial costs, emotional anguish, and the loss of reproductive opportunity because embryos that cannot be transferred or utilized as intended.

## COUNT VII
### Fraudulent Claims

103. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

104. Defendants' acts and practices constitute fraudulent claims because Defendants fraudulently claimed information that was material to the reason Plaintiff purchased PGT-A testing from Defendants and entrusted Defendants to perform PGT-A testing, including but not limited to, that Defendants represented to the Plaintiff that:

     a. Defendants' PGT-A testing is greater than 97% accurate;

- 15 -

COMPLAINT

b. Defendants' PGT-A testing increases the success of IVF;

c. Defendants' PGT-A testing decreases the chance of miscarriage;

d. Defendants' PGT-A testing leads to a higher chance of pregnancy;

e. Defendants' PGT-A testing reduces the time to pregnancy;

f. Defendants' PGT-A testing increases live birth rates across all age groups;

g. Defendants' PGT-A testing increases the chance of implantation;

h. Defendants' PGT-A testing reduces the emotional, physical, and financial impacts of IVF.

105. Defendants made these claims on their website, marketing and contracts with the Plaintiff. Defendants knew that these claims were false and made them with the intent that Plaintiff would rely on them to form their decision to purchase PGT-A testing and utilize the results of Defendants' PGT-A testing to make decisions about their embryos and IVF treatment.

106. Plaintiff reasonably relied on Defendants' claims.

107. Plaintiff was significantly harmed, as described herein, and Plaintiff's reliance on Defendants' fraudulent claims were a substantial factor in causing such harm.

108. This harm includes financial injury, emotional distress, and the loss of use of embryos that cannot be transferred due to Defendants' misrepresentations and omissions.

## COUNT VIII
### Violations of California Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unfair and Fraudulent Prongs)

109. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

- 16 -

COMPLAINT

110. California Business & Professions Code § 17200 ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

111. The acts and practices of Defendants as alleged herein constitute "unfair" business acts and practices under the UCL in that Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

112. Defendants have in the course of their business, and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices under the UCL by making misleading statements and omitting material information regarding the accuracy and reliability of PGT-A, and making the additional false and misleading statements and omissions alleged herein.

113. Specifically, Defendants have made misleading statements and omitted material information regarding the accuracy and reliability of its PGT-A to sell testing.

114. These acts also constitute "fraudulent" business acts and practices under the UCL in that Defendants' conduct is false, misleading, and has a tendency to deceive Plaintiff.

115. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' fraudulent business acts or practices.

116. The above-described unfair business acts or practices present a threat and likelihood of harm and deception to Plaintiff in that Defendants have systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

117. Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff seeks an order providing restitution and disgorgement of all profits relating

- 17 -

COMPLAINT

to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

118. Because of their reliance on Defendants' misleading statements and omissions concerning Defendants' PGT-A testing, Plaintiff has suffered an ascertainable loss of money, property, and/or value, and were harmed and suffered actual damages.

119. Plaintiff is a reasonable consumer who, based on Defendants' public misleading statements and omissions as alleged herein, did not expect that Defendants' PGT-A testing and the results of that testing would not be consistent with those statements.

120. Defendants' conduct in concealing and failing to disclose the inaccuracy and unreliability of PGT-A testing and its results is unfair in violation of the UCL, because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious.

121. Defendants acted in an immoral, unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner.

122. The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility. The practice of falsely marketing PGT-A as accurate and reliable to consumers harms the public at large and is part of a common and uniform course of wrongful conduct.

123. Plaintiff suffered injury in fact, including direct economic losses, as a direct result of Defendants' unfair acts.

124. Absent Defendants' conduct, Plaintiff would not have bought PGT-A from Defendants.

125. Through their unfair conduct, Defendants acquired money that Plaintiff once had ownership of.

- 18 -

COMPLAINT

126.   Plaintiff accordingly seeks appropriate relief under the UCL, including (a) restitution in full, and (b) such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair practices.

## COUNT IX
### Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unlawful Prong)

127.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

128.   The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 ("UCL"). By engaging in business practices which are also illegal, Defendants have violated the UCL.

129.   Defendants' "unlawful" acts and practices include breach of the implied warranty of merchantability, breach of the implied warranty of usability, fraud-based omissions, and unjust enrichment.

130.   More specifically, Defendants breached applicable warranties in connection with the marketing and sale of Defendants' PGT-A testing. Defendants marketed and sold PGT-A testing to Plaintiff, knowing that PGT-A testing was unproven, inaccurate, and unreliable.

131.   Plaintiff conferred tangible and material economic benefits upon Defendants by purchasing PGT-A. Plaintiff would not have purchased PGT-A from Defendants if they had known that it was unproven, inaccurate, and unreliable.

132.   Defendants reaped unjust profits, revenue, and benefits by virtue of their UCL violations.

133.   Plaintiff seeks restitutionary disgorgement of these unjust profits and revenues.

COMPLAINT

## COUNT X
### Violations of California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

134. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

135. Plaintiff is a consumer as defined by Civil Code §§ 1761(d) and 1770 and have engaged in "transaction[s]" as defined by Civil Code §§ 1761(e) and 1770.

136. Defendants' are "person[s]" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

137. Defendants' acts and practices as detailed herein, violated Civil Code § 1770 by the following:

   a. (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

   b. (5) Representing that services have approval, characteristics, uses, benefits, or qualities that they do not have;

   c. (7) Representing that services are of a particular standard, quality, or grade; and

   d. (9) Advertising services with intent not to sell them as advertised.

138. Defendants' acts and practices violated the Consumers Legal Remedies Act because they failed to disclose information that was material to Plaintiff, for example:

   a. By failing to provide an accurate assessment of the state of scientific study and knowledge concerning PGT-A;

   b. By failing to disclose that the value of PGT-A as a screening test for IVF patients has not been demonstrated by science;

- 20 -

COMPLAINT

c. By failing to have the above statements supported by properly designed research studies;

d. By failing to tell consumers that PGT-A is experimental;

e. By failing to tell consumers that PGT-A is unproven;

f. By failing to tell consumers that PGT-A results have a substantial degree of inaccuracy; and

g. By failing to tell consumers that PGT-A has a substantial degree of unreliability.

139. Defendants had ample means and opportunities to alert Plaintiff that PGT-A was not supported by science as claimed by Defendants' advertising, marketing, and promotional materials.

140. Despite these opportunities, Defendants failed to disclose information that was material to Plaintiff. Had such disclosures been made, Plaintiff would not have purchased PGT-A and relied on the results.

141. Defendants had a duty to accurately disclose the validity of PGT-A, the unsupported claims that they were making to consumers, and to accurately disclose the current state of science regarding PGT-A. Defendants had a duty to, through its advertising, marketing, and promotion of PGT-A, not mislead consumers.

142. Defendants had superior knowledge of the relevant facts and science as compared to Plaintiff, yet actively concealed and misled consumers concerning the truth about PGT-A.

143. As a direct and proximate result of Defendants' deceptive acts and practices in violation of the Consumers Legal Remedies Act, Plaintiff has suffered actual damages.

144. Plaintiff would not have purchased PGT-A had she been told the truth by Defendants. In the meantime, Defendants generated more revenue than they otherwise would have, unjustly enriching themselves.

COMPLAINT

145. Plaintiff was harmed, and Defendants' misleading statements and omissions were a substantial factor in causing this harm in the form of economic losses.

146. Plaintiff accordingly is entitled to statutory relief, equitable relief, reasonable attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their continued unlawful, fraudulent, and deceitful activity.

147. Pursuant to Civil Code § 1782(a), on January 15, 2025, Plaintiff sent a letter to CooperSurgical to notify them of their CLRA violations and afford them the opportunity to correct their business practices and rectify the harm they caused. The correspondence was mailed via first class certified mail with return receipt requested. Defendants failed to correct the acts and practices detailed herein within 30 days. Therefore, Plaintiff seeks money damages under CLRA.

## COUNT XI
### Trespass to Chattels

148. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

149. Defendants have committed common law trespass to chattel.

150. Plaintiff's embryos were at all relevant times their personal property.

151. Defendants intentionally interfered in the Plaintiff's possession or use of their embryos.

152. Due to Defendants' error in testing, Plaintiff was unable to use their embryos.

153. As a direct and proximate result of Defendants' intentional interference, Plaintiff sustained damages in the form of economic costs and the loss of their embryos based upon Defendants' PGT-A testing.

- 22 -

COMPLAINT

## COUNT XII
### Unjust Enrichment

154. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

155. Plaintiff declares this remedy in the alternative to their other claims to the extent there is no adequate remedy at law.

156. Plaintiff purchased PGT-A testing from Defendants based upon misleading and fraudulent statements and omissions.

157. Due to errors by the Defendants, the PGT-A testing failed and Plaintiff was harmed.

158. It is inequitable and unjust for Defendants to retain the amounts received from the Plaintiff for PGT-A testing and associated costs due to Defendants' failure to provide accurate and complete PGT-A testing, which resulted in the inability to transfer embryos due to inaccurate results.

159. Accordingly, Defendants will be enriched without cause if allowed to retain such funds and must pay restitution to the Plaintiff in the amount which Defendants were unjustly enriched by Plaintiff's purchase of PGT-A testing.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in their favor and against Defendants, and each of them, as follows:

    a. Awarding Plaintiff all compensatory, statutory, restitution, and punitive damages as permitted by law against Defendants;

    b. Scheduling a trial by jury in this action;

- 23 -

COMPLAINT

c.  Awarding Plaintiff's reasonable attorneys' fees, costs and expenses, as permitted by law;

d.  Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

e.  Awarding such other and further relief as may be just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury on all issues triable as of right.


DATED: June 25, 2026            */s/Karen Barth Menzies*
                               Karen Barth Menzies
                               **Justice Law Collaborative, LLC**
                               6701 Center Drive West, #1400
                               Los Angeles, California 90045
                               Telephone: (310) 363-0030
                               karen@justicelc.com

                               *Counsel for Plaintiff, Jennifer Kemp*

COMPLAINT